IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Christopher Hall,<br><br>        Plaintiff<br><br>   v.<br><br>Denmark Technical College; and Dr. Willie Todd, in his official and individual capacity,<br><br>        Defendants. | C/A. No. 5:21-00619-CMC<br><br><br>Opinion and Order<br>Granting Motion for<br>Judgment on the Pleadings |

This matter is before the court on Defendants Denmark Technical College ("DTC") and Dr. Willie Todd's (collectively "Defendants") motion for judgment on the pleadings on Plaintiff Christopher Hall's ("Plaintiff") claims arising out of his at-will employment at DTC. ECF No. 12. Plaintiff responded in opposition (ECF No. 21), and Defendants replied (ECF No. 26).

In Plaintiff's response in opposition, he requested leave to amend his Complaint as an alternative to dismissal. ECF No. 21 at 1. The court entered a Text Order allowing Plaintiff to file a motion for leave to amend his Complaint, and holding Defendants' motion to dismiss in abeyance until the amendment issue was resolved. ECF No. 27. Plaintiff then filed his motion, seeking leave to amend his Complaint, and attaching a proposed Amended Complaint. ECF No. 28. Defendants opposed amendment, contending the proposed amendments did not, and could not, cure the deficiencies in the Complaint and thus would be futile. *Id.* at 2.[1] Plaintiff filed a reply. ECF No. 32. The court granted the motion for leave to amend, and the Amended Complaint was

---

[1]Defendants renewed their motion for judgment on the pleadings in the event amendment was granted. *Id.* at 2-3.

filed. ECF No. 34. Defendants filed a renewed motion for judgment on the pleadings (ECF No. 36), Plaintiff responded in opposition (ECF No. 38), and Defendants replied (ECF No. 39). The court therefore addresses the Amended Complaint and renewed motion for judgment on the pleadings.

For the reasons set forth below, the renewed motion is granted.

## BACKGROUND[2]

This case arises out of Plaintiff's employment at DTC as interim President, which began on or about January 31, 2017. ECF No. 34 at ¶ 11. This position was classified, for administrative purposes only, as Vice President, a position that normally required a probationary period in order to be considered a covered employee.[3] *Id.* at ¶¶ 12-13. In or around July 2019, DTC hired another Vice President, Dr. Willie Todd. *Id.* at ¶ 14. It was also conducting a search for a permanent President. *Id.* at ¶ 15. In December 2019, the DTC Area Commission Chairperson informed Plaintiff he was not one of the three finalists for the position of President. *Id.* at ¶ 16. On or about January 2, 2020, the DTC Area Commission appointed Dr. Todd President. *Id.* at ¶ 17. Subsequently, Plaintiff was appointed Vice President for Institutional Research, Planning, and Development. *Id.* at ¶ 18. Plaintiff was later called into a meeting with Dr. Todd and DTC HR Director Thomas Mayer, during which Plaintiff was asked to assist in DTC's continuing education division, and was asked about deleted files from a DTC computer. *Id*. at ¶¶ 21-22. He "never was deemed to have committed any wrongdoing." *Id.* at ¶ 22. On about January 27, 2020, Plaintiff's

---

[2] The facts are taken in the light most favorable to the non-moving party, Plaintiff.

[3] Under the South Carolina Grievance Act, a "covered employee" is entitled to challenge adverse employment actions at the agency level and appeal the agency's determination administratively. See S.C. Code Ann. § 8-17-310 *et seq.*

2

employment was terminated. Id. at ¶ 23. He attempted to file a grievance with Dr. Todd, but was advised he was a probationary employee and not entitled to grievance rights; thus, his grievance was denied. *Id.* at ¶ 24. Although he had been advised by the State Technical System Assistant HR Director he was a covered, non-probationary employee, he did not pursue the grievance. *Id.* at ¶ 49.

This case, originally filed in state court, alleges Plaintiff's former employer DTC and current DTC president Dr. Todd wrongfully terminated his employment. ECF No. 1-1. Plaintiff brought the following causes of action against DTC and Todd: state law claims for wrongful discharge in violation of public policy and equitable estoppel against DTC; and claims against DTC and Dr. Todd under 42 U.S.C. § 1983 for violation of Plaintiff's procedural due process rights, as well as deprivation of liberty and property interests. *Id.* On March 3, 2021, Defendants removed the case to this court. ECF No. 1. An Amended Complaint was filed October 11, 2021, alleging the same four causes of action. ECF No. 34.

## STANDARD

The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6). *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Therefore, a motion for judgment on the pleadings "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact. *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012). Facts alleged in the complaint are assumed to be true, and the court will draw all reasonable

factual inferences in Plaintiff's favor. *Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).[4]

## PARTIES' ARGUMENTS

Defendants contend Plaintiff's causes of action fail to state a valid claim and therefore Defendants are entitled to judgment as a matter of law. ECF No. 36. Specifically, they argue: (1) the First Cause of Action for Wrongful Discharge in Violation of Public Policy ("WDVPP") against DTC fails because Plaintiff failed to exhaust administrative remedies and on the merits; (2) the Second Cause of Action for Equitable Estoppel against DTC fails because Plaintiff has not pled a valid equitable estoppel claim and because DTC had the right to terminate the employment relationship at any time; (3) the § 1983 Causes of Action against DTC and Dr. Todd fail because they are barred by sovereign immunity, DTC is not a "person" under § 1983, the claims against Dr. Todd in his individual capacity are barred by qualified immunity, and all § 1983 claims against both Defendants fail on the merits.

Plaintiff responded in opposition, arguing he was not required to exhaust administrative remedies for his WDVPP claim[5], and that claim does not fail on the merits. ECF No. 38 at 5-8. He contends his equitable estoppel claim has been sufficiently pled. In addition, he argues the

---

[4] The court notes Defendants attached certain correspondence with Plaintiff to their Amended Answer. ECF No. 35. Plaintiff does not dispute the authenticity of these documents.

[5] Indeed, he contends, Defendants notified him in response to his initial grievance that grievance procedures were not available to him, and Defendants acknowledge as much in their motion. ECF Nos. 38 at 6; 36-1 at 3 ("DTC advised Plaintiff that, as a probationary Vice President, he was not covered by the State Employee Grievance Procedure Act.").

§ 1983 claims against both Defendants are proper and qualified immunity does not apply to Dr. Todd.[6]

Defendants replied, arguing Plaintiff failed to appeal DTC's determination that he was a probationary employee administratively, and he therefore is barred from doing so now, in this court. ECF No. 39. They assert the WDVPP claim is barred as Plaintiff failed to pursue statutory remedies though the Grievance and Wage Payment Acts, and his equitable claim to excuse this failure is without merit. They also argue the § 1983 claims against DTC and Dr. Todd in his official capacity are barred by sovereign immunity and fail on the merits, and the § 1983 claims against Dr. Todd in his individual capacity fail because the Amended Complaint only alleges actions he could have taken in his official capacity and he is entitled to qualified immunity. In addition, they contend the claims for deprivation of liberty and property interests fail on the merits.

## DISCUSSION

### 1. *Wrongful Discharge in Violation of Public Policy*

Plaintiff's First Cause of Action asserts Defendants violated public policy when terminating his at-will employment, as the discharge violated State Board policies based on South Carolina law. ECF No. 34 at ¶¶ 27, 29. These policies and laws require employers to notify employees of the terms and conditions of their employment, and to provide a grievance procedure. *Id.* at ¶ 28. Plaintiff alleges he did not receive terms of his employment, and was terminated without justification. *Id.* at ¶ 33. When Plaintiff appealed this termination, he asserts DTC denied

---

[6] The court notes the Amended Complaint names Dr. Willie Todd in his individual and official capacity. ECF No. 34.

5

him grievance rights. Plaintiff alleges this wrongful termination was "intentional and in reckless disregard of his rights to be free from such termination." *Id.* at ¶ 42.

Defendants argue Plaintiff's WDVPP claim fails because he did not identify a violation of a clear mandate of public policy that precipitated a retaliatory discharge. ECF No. 36-1 at 7.[7] Plaintiff contends he identified public policy set forth in the South Carolina Payment of Wages Act ("PWA") "to notify each employee in writing at the time of hiring of their normal hours and wages agreed upon and their rights to employment." ECF No. 38 at 10. He notes the PWA has been identified as applicable public policy in a wrongful termination claim. *Id.* at 10-11 (citing *Boozer v. MCAS Beaufort*, C/A No. 2:14-cv-3312, 2015 WL 1640473 at *4 (D.S.C. March 9, 2015) (adopting Report and Recommendation).

The court finds, however, that Plaintiff's termination was not a *retaliatory* discharge in violation of public policy. *See Barron v. Labor Finders of South Carolina,* 713 S.E.2d 634, 638 (S.C. 2011) ("In this state, an at-will employee has a cause of action for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. The determination of what constitutes public policy is a question of law for the courts to decide."); *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E. 2d 213, 225 (S.C. 1985) ("Where the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises."). In other words, Plaintiff does not allege he was terminated after complaining about or refusing to do an action required of

---

[7] Defendants also note Plaintiff had a statutory remedy available via the Grievance Act to challenge his termination but chose not to pursue it, thus failing to exhaust administrative remedies. *Id.* at 8. The court need not reach this issue as the court finds this claim fails on the merits.

him by his employer that was against public policy. If Plaintiff had raised the issue that he did not receive his hours, wages, and rights to employment in writing at the time of his hiring, and then been fired, there *may* have been a cause of action for WDVPP; however, to raise it after his termination, as pled, does not constitute a retaliatory discharge. *See Keiger v. Citgo, Coastal Petroleum, Inc.*, 482 S.E.2d 792, 794 (S.C. Ct. App. 1997) ("[W]hether an employer's *retaliatory* discharge of an employee who threatens to invoke her rights under the Payment of Wages Act is a clear mandate of public policy, is likewise a novel issue . . . [that] should not have been dismissed pursuant to a 12(b)(6) motion. Whether the statute itself, which was designed to protect working people and assist them in collecting wrongfully withheld compensation . . . constitutes a legislative declaration of public policy has never been addressed by the courts of this state.") (emphasis added).

Plaintiff also raises public policies related to School Board policies and state law regarding the State Employee Grievance Procedure Act. However, similar to his Wage Payment Act claim, he does not allege he raised any sort of complaint or grievance related to these policies or statutes prior to his termination and was discharged in retaliation. Therefore, Plaintiff has failed to state a claim for WDVPP, and the First Cause of Action is dismissed.

  2. *Equitable Estoppel Claim*

Plaintiff's Second Cause of Action seeks equitable estoppel as to DTC. Plaintiff alleges he relied on DTC's representations he was a covered employee as a Vice President serving as Interim President of DTC and was not a temporary employee. He thus was entitled to "full grievance rights just as any other employee." ECF No. 34 at 7. Plaintiff contends DTC "should be equitably estopped from terminating Plaintiff's employment and salary as well as equitably estopped from denying him with [*sic*] full grievance rights." *Id.*

DTC claims this cause of action fails as a matter of law because Plaintiff was an at-will employee and DTC had the right to terminate the employment relationship at any time. ECF No. 36-1 at 10. It argues Plaintiff has not pled a valid equitable estoppel claim because he "disregarded the legal remedy available to him," and because he cannot establish justifiable reliance on DTC's conduct or a prejudicial change in position. *Id.* at 11-12. Because "equity follows the law," and Plaintiff's at-will employment and grievance rights were established by law, DTC contends the equitable claim must be dismissed.

Plaintiff opposes dismissal of this claim, arguing his claim is for equitable estoppel based on representations made by Dr. Todd that he was not eligible for the state employee grievance procedure. ECF No. 38 at 12. He contends he "justifiably relied upon the information provided from Dr. Todd and the College," noting he did not disregard a legal remedy available to him. *Id.* at 14-15. On reply, Defendants argue Plaintiff was presumed to know the law and "cannot relieve himself of the duty to abide by the procedure set forth in the Grievance Act to challenge DTC's determination." ECF No. 39 at 4. They request this cause of action be dismissed.

Under South Carolina law, a cause of action for equitable estoppel requires (1) a lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) justifiable reliance on the defendant's conduct, and (3) a prejudicial change in position. *Morgan v. South Carolina Budget and Control Bd.*, 659 S.E.2d 263, 267 (S.C. Ct. App. 2008).

Although Plaintiff argues he relied on Dr. Todd's statement that he was not covered under the Grievance Act, the court finds Plaintiff had the means of knowledge to determine whether he was in fact a covered employee by contacting the State Technical System Human Resources Department. Further, he alleges he did in fact contact the State Technical System Assistant HR

Director days before his termination, who "confirmed to Plaintiff that he was classified as a Vice President and was a covered employee." ECF No. 34 at ¶ 49.[8]

In addition, Plaintiff was an at-will employee and has not pled any statements or representations by Defendants regarding ongoing employment prior to his termination upon which he relied. Plaintiff acknowledges he was an at-will employee but notes he "never was disciplined or otherwise counseled prior to his termination." ECF No. 34 at ¶ 51. However, as discussed further *infra* at page 14, Plaintiff was not entitled to application of a progressive discipline policy prior to termination. Plaintiff's claim for equitable estoppel is therefore dismissed.

   3. *§ 1983 Claims*

Plaintiff's Third Cause of Action alleges both Defendants infringed his liberty interest by "impugning the good name, reputation, honor, and integrity of Plaintiff by terminating his employment and making false allegations of unsatisfactory job performance." ECF No. 34 at ¶ 58. He further alleges Defendants deprived him of substantive due process by terminating him. *Id.* at ¶ 70. In the Fourth Cause of Action, also against both Defendants, Plaintiff asserts he had a property interest in his employment with DTC and Defendants' termination of that employment violated his right to due process because they did not follow "the terms and conditions of his employment and the written policies and procedures of DTC and SCTCS, South Carolina law, and the laws and Constitution of the United States of America." *Id.* at ¶ 76.

---

[8] South Carolina courts have found plaintiffs who failed to exhaust administrative remedies by pursuing all appeals "abandoned the only opportunity to gain a favorable ruling on the issues involving termination" and could not bring state law claims regarding the termination. *See Bennett v. South Carolina Dept. of Corr.*, 408 S.E. 2d 230, 231 (S.C. 1991).

> a. *Claims against DTC*

Defendants' Motion for Judgment on the Pleadings argues the § 1983 claims against DTC are barred by sovereign immunity because it is an arm of the State of South Carolina and because DTC is not a "person" acting under color of state law under § 1983. ECF No. 36-1 at 13-15. Sovereign immunity bars claims by private citizens against state governments except where Congress has abrogated immunity or the state has waived it. Congress has not abrogated immunity for § 1983 claims, and South Carolina has not consented to suit in federal court. *See Quern v. Jordan*, 440 U.S. 332, 342-43 (1979); S.C. Code Ann. § 15-78-20(e).

The State of South Carolina created the State Board for Technical and Comprehensive Education "as . . . an instrumentality of the State," and DTC was established under the laws of the State. S.C. Code Ann. § 59-53-10; § 59-53-20; § 59-53-610. The court agrees DTC is a "governmental unit of the State of South Carolina" and as such the § 1983 claims against it are barred by sovereign immunity. *Henry v. Denmark Tech. Coll., et al*, 869 F.2d 593, 1989 WL 14422, at *2 (4th Cir. 1989) (Table) ([T]he enabling and governing legislation for Denmark Technical College makes it clear that the College is a governmental unit of the State of South Carolina.").

Plaintiff argues he can bring a claim against a local governing body under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). ECF No. 21 at 15. However, as noted above, DTC is an arm of the State government, not a local government or municipality. Therefore, Plaintiff cannot avail himself of *Monell* to save his § 1983 claims against DTC.

He also argues the court should deny the motion on sovereign immunity grounds and allow discovery to proceed, as raising this ground on a Rule 12 motion "may not be appropriate." *Id.*

(citing *Pope v. Barnwell Cnty. Sch. Dist. No. 19 et al.*, C.A. No. 1:16-CV-01627-JMC (D.S.C. March 28, 2017)). Plaintiff quotes *Pope*:

> Fourth Circuit case law supports the proposition that a Rule 12 motion may not be the appropriate vehicle through which a defendant should assert Eleventh Amendment sovereign immunity. *See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 147–48 (4th Cir. 2014) (Traxler, C.J., concurring in part and dissenting in part) ("Although this court has not addressed the issue, the circuits that have considered similar assertions of arm-of-state status have uniformly concluded that it is an affirmative defense to be raised and established by the entity claiming to be an arm of the state. *See Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012) ("[S]overeign immunity is a waivable affirmative defense."); *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144,1147 (9th Cir. 2007) ("Eleventh Amendment immunity is an affirmative defense . . . ." (internal quotation marks omitted)); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237–39 (2d Cir. 2006) (treating Eleventh Amendment immunity "as akin to an affirmative defense"); . . . . I believe these decisions were correctly decided and that the arm-of-state issue .. . is an affirmative defense . . . . "[a]n[d such] affirmative defense may provide the basis for a Rule 12(b)(6) dismissal only in the relatively rare circumstances . . . where all facts necessary to the affirmative defense clearly appear on the face of the complaint.") (emphasis in original)(internal citation and quotation marks omitted).)

Plaintiff has alleged facts necessary to the affirmative defense on the face of the Amended Complaint. He notes DTC "is organized and existing pursuant to the laws of the State of South Carolina and governed by a board of area commissioners," is a technical college "overseen by the South Carolina Technical College System ("State Board")", and "adheres to the State Board policies and procedures." ECF No. 34 at ¶¶ 2, 9. He alleges during his employment with DTC as interim President, he was "classified as a Vice President under State Board for Technical and Comprehensive Education policy." *Id.* at ¶ 12.

The court finds Defendants have raised the defense of sovereign immunity and shown DTC is an arm of the state. In addition, Plaintiff has alleged facts necessary to the affirmative defense, and they appear on the face of the Amended Complaint. Discovery on this issue is not necessary, as it is an issue of law made clear by South Carolina statutes and precedential circuit case law.

Accordingly, sovereign immunity applies to bar Plaintiff's claims against DTC under § 1983. These claims are dismissed with prejudice.

### b. *Claims against Dr. Todd*

Defendants also argue Plaintiff's § 1983 claims raised against Dr. Todd in his official capacity are barred by sovereign immunity, and those against Dr. Todd in his individual capacity are barred by qualified immunity.[9] The court finds claims against Dr. Todd in his official capacity are barred by sovereign immunity as he was acting as an employee of DTC, which is an arm of the state. *See Henry*, 1989 WL 14422, at *2; *Jackson v. Denmark Tech. Co*, Civil Action No. 1:17-03431-MGL, 2018 WL 3729743, at *6 (D.S.C. Aug. 6, 2018) ("Eleventh Amendment immunity generally protects States and State officials sued in their official capacities – like [DTC President and South Carolina Technical College System President] here – from suit in federal court for monetary damages under § 1983. Such a suit is barred here.").

As to the claims against Dr. Todd in his individual capacity, Defendants contend the Amended Complaint alleges actions that Dr. Todd could only have undertaken in his official capacity. ECF No. 36-1 at 16. Further, they argue qualified immunity applies because Plaintiff cannot establish the first prong for qualified immunity: deprivation of a constitutional right. *Id.* at 17-25 (analyzing qualified immunity, property interest, and liberty interest). They also contend the § 1983 claims against Dr. Todd fail on the merits.

Plaintiff argues he had liberty and property interests in his "career as a higher education administrator." ECF No. 38 at 19-23. Plaintiff references the performance evaluation he received

---

[9] As noted above, Plaintiff's Amended Complaint names Dr. Todd in both individual and official capacities. ECF No. 34.

while interim president, in which DTC Area Commission members made negative comments about his job performance. He contends these statements imply "serious character defects which directly impede Plaintiff's ability to obtain comparable employment in higher education." *Id.* at 20. He notes that "while Defendants may believe that Plaintiff's allegations eventually will be disproven as litigation progresses, the allegations satisfy the standard to survive a FRCP Rule 12(c) motion." *Id.* at 21. Plaintiff also asserts he had a property interest in continued employment because he was "entitled to access to the grievance process post-termination and progressive discipline prior to being terminated." *Id.* at 22.

### i. Liberty Interest

Plaintiff alleges a reputational liberty interest in this § 1983 claim. A § 1983 claim for deprivation of a liberty interest arises if a plaintiff's reputation is injured in conjunction with the deprivation of some tangible interest. Plaintiff must establish Dr. Todd's actions: (1) stigmatized his reputation, (2) were made public by Dr. Todd, (3) were made in conjunction with his termination, and (4) were false. *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 649 (4th Cir. 2007).

The evaluation Plaintiff complains stigmatized his reputation concerned his performance in the 2018-2019 school year, when he was serving in the role of interim President. It was prepared by the DTC Area Commission, not Dr. Todd.[10] In or around December of 2019, Plaintiff was informed by the Area Commission Chairperson he was not a finalist for the permanent position of DTC President. He was subsequently appointed Vice President for Institutional Planning and Development. ECF No. 34 at ¶¶ 16, 18. Plaintiff was also asked to assist in DTC's continuing

---

[10] Dr. Todd was then a Vice President who did not serve on the Commission.

education division. *Id.* at ¶ 21. However, on January 27, 2020, Plaintiff's employment with DTC was terminated by Dr. Todd, who had been appointed DTC President. *Id.* at ¶ 23.

Because the liberty interest claim against DTC was dismissed based on sovereign immunity, the only remaining claim for deprivation of a liberty interest is against Dr. Todd in his individual capacity. However, the Amended Complaint does not allege Dr. Todd was involved in any way with the complained-of evaluation: Plaintiff alleges this evaluation was "improperly" done by the DTC Area Commission, of which Dr. Todd was not a member.[11]

The only allegations of a liberty interest violation by Dr. Todd are: "the Individual Defendant, upon becoming DTC President, moved forward with Plaintiff's termination knowing that Plaintiff had no disciplinary issues. The Individual Defendant then terminated Plaintiff and falsely advised, in writing, that he never served as a Vice President." ECF No. 34 at ¶ 66. However, Plaintiff has not alleged he was provided reasons for termination of his at-will employment or that it was because of disciplinary issues. Nor has he alleged Dr. Todd made a public disclosure of the reasons, if any. "[W]here there is no public disclosure of the reasons for discharging a public employee whose job is terminable at the will of the employer, no liberty interest is implicated."

---

[11] Although the court need not reach these issues, it notes Plaintiff does not allege this evaluation was made "in conjunction with his termination." *Sciolino*, 480 F.3d 649; *Ridpath*, 447 F.3d at 309 ("We have required that, in order to deprive an employee of a liberty interest, a public employer's stigmatizing remarks must be made in the course of a discharge or significant demotion."). Here, Plaintiff does not allege this evaluation took place in connection with or was the reason for his termination. Further, the statements complained of fail to implicate a liberty interest. *Bunting v. City of Columbia*, 639 F.2d 1090, 1094-95 (4th Cir. 1981); *see also Ridpath v. Board of Governors Marshall Univ.,* 447 F.3d 292, 308 (4th Cir. 2006) ("The type of communication that gives rise to a protected liberty interest implies 'the existence of severe character defects such as dishonesty or immorality.'") (citing *Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir. 1982)); *Cox v. Northern Virginia Transp. Comm'n*, 551 F.2 555 (4th Cir. 1976) (public charges of dishonesty or immorality made about discharged employee warranted hearing).

*Bunting*, 639 F.2d at 1094. Plaintiff's allegation Dr. Todd "[knew] Plaintiff had no disciplinary issues" does not make the termination of his at-will employment actionable.

Plaintiff's allegation that Dr. Todd "falsely advised, in writing, that he never served as a Vice President," is belied by the letter from Dr. Todd to Plaintiff, which noted "You never functioned as a Vice President of DTC prior to January 13, 2020. As of January 13, 2020, your position became that of a probationary Vice President." ECF No. 35-1. Moreover, as explained above, Plaintiff was entitled to appeal the denial of his right to file a grievance at the time of his termination but failed to do so.

"In order to be accorded the protection of the due process clause, the complaining party must have a liberty or property interest within the meaning of the Fourteenth Amendment." *Bunting*, 639 F.2d at 693 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)). As Plaintiff has failed to allege a viable liberty interest claim against Dr. Todd, any claim under the due process clause must also be dismissed.

### ii. Property Interest

Plaintiff also alleges a violation of his property interest in continued employment. To pursue a claim for a protected property interest in employment, a public employee must show that he has a "legitimate claim of entitlement to [continued employment] arising from such sources as state statutes, local ordinances, and employment contracts." *Bunting*, 639 F.2d at 1093; *see also Roth*, 408 U.S. at 577. Plaintiff claims he was classified as a Vice President and as such was a covered employee under state law regulations (S.C. Code Ann. Regs. 19-718.03 and 19-717), and could not be terminated without use of a progressive disciplinary policy "or under the basis of being a probationary employee." ECF No. 34 at ¶ 77.

To the extent Plaintiff argues Defendant Todd violated such policies in terminating him, thus creating a protected property interest, this argument is foreclosed. The Fourth Circuit has determined even if a university "gratuitously afford[s] . . . procedural safeguards not constitutionally mandated, deviations from those procedures do not support a claim under the Fourteenth Amendment and Section 1983." *Kilcoyne v. Morgan*, 664 F.2d 940, 942 (4th Cir. 1981); *see also Henry-Davenport v. Sch. Dist. of Fairfield Cnty.*, 832 F.Supp.2d 602, 611 (D.S.C. 2011), aff'd, 498 F. App'x 193 (4th Cir. 2012) ("Where an employee has no enforceable expectation in the deprived position or salary, grievance rights under employer policies cannot create a property interest."); *Nkwocha v. South Carolina State Univ.*, No. 5:12-2703-MBS, 2014 WL 1278006, at *10 (D.S.C. Mar. 26, 2014) ("[A] public employer's violation of its own procedures does not, by itself, give rise to a due process claim.").

Plaintiff also argues he had a property interest in grieving his termination, which was denied by Defendants allegedly in violation of the Grievance Act. However, failure to follow state employee grievance procedures does not give rise to a claim of a protected liberty or property interest in the case of an at-will employee. *Nkwocha*, 2014 WL 1278006, at *10 (citing *Bunting*, 639 F.2d at 1094 (finding a due process claim is not viable based on public employer's failure to follow state law procedures if at-will employee has no protected property interest in continued employment)). Therefore, Plaintiff has failed to allege a constitutional deprivation of a property interest in continued employment.[12]

---

[12] The Fourth Circuit in *Bunting* determined although the plaintiffs did not have constitutional property or liberty interests implicated in their dismissal, they should have received a hearing under the County and Municipal Employees Grievance Procedure Act, akin to the Grievance Act at issue in this case for state employees. 639 F.2d at 1095. Plaintiff, however, has not brought a cause of
Footnote Continued . . .

The court finds Plaintiff's § 1983 claims based on liberty and property interests fail on the merits and are therefore dismissed.

## CONCLUSION

Defendants' motion for judgment on the pleadings under Rule 12(c) (ECF No. 38) is granted. Plaintiff's claims are dismissed with prejudice, as he has previously had an opportunity to amend his complaint.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
December 15, 2021

---

action for violation of the Grievance Act, and such relief is not available under either the § 1983 claim or the state law claims in the Amended Complaint.

17